**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEROY J. KELLY,,<br><br>        Petitioner,<br><br>   v.<br><br>DIRECTOR, FEDERAL BUREAU OF PRISONS, et al.,<br><br>        Respondents. | Case No. 1:13-cv-00117-SKO-HC<br><br>ORDER GRANTING RESPONDENT'S MOTION TO DISMISS OR DENY THE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DOC. 27), DENYING THE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (DOC. 8), AND DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT |

    Petitioner is a federal prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Pursuant to 28 U.S.C. 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on February 11, 2013, and on behalf of Respondent on June 24, 2013.

    Pending before the Court is the Respondent's motion to dismiss the first amended petition (FAP) which was served on Petitioner on October 31, 2013.  The time for filing an opposition to the motion

1

has passed and no opposition has been filed.

In the FAP, Petitioner seeks an order directing the Federal Bureau of Prisons (BOP) to respond to Petitioner's request for a "Nunc Pro Tunc Designation Transfer" (FAP, doc. 8, 5), whereby the BOP would exercise its discretion pursuant to 18 U.S.C. § 3621 to consider designating a state institution for Petitioner to serve his federal sentence and allow him to serve this sentence concurrently with a state sentence imposed after commencement of his federal sentence.

Respondent contends the petition should be dismissed for Petitioner's failure to exhaust his administrative remedies within the BOP; if not dismissed, the petition should be denied because the relief Petitioner seeks is not possible.

I. Proceeding by a Motion to Dismiss

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

Title 28 U.S.C. § 2241 provides that writs of habeas corpus may be granted by a district court within its jurisdiction only to a prisoner whose custody is within enumerated categories, including but not limited to custody under the authority of the United States or custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(a), (c)(1) and (3).

A district court must award a writ of habeas corpus or issue an order to show cause why it should not be granted unless it appears from the application that the applicant is not entitled thereto. 28

U.S.C. § 2243.  Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) is applicable to proceedings brought pursuant to § 2241.  Habeas Rule 1(b).  Habeas Rule 4 permits the filing of "an answer, motion, or other response," and thus it authorizes the filing of a motion in lieu of an answer in response to a petition.  Rule 4, Advisory Committee Notes, 1976 Adoption and 2004 Amendments.  Rule 4 confers upon the Court broad discretion to take "other action the judge may order," including authorizing a respondent to make a motion to dismiss based upon information furnished by respondent, which may show that a petitioner's claims suffer a procedural or jurisdictional infirmity, such as res judicata, failure to exhaust state remedies, or absence of custody.  Id.

In light of the broad language of Rule 4, motions to dismiss are appropriate in cases brought pursuant to 28 U.S.C. § 2254 that present issues of failure to state a colorable claim under federal law, O'Bremski v. Maas, 915 F.2d 418, 420-21 (9th Cir. 1990); procedural default in state court, White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989); and failure to exhaust state court remedies, Hillery v. Pulley, 533 F.Supp. 1189, 1194 n.12 (E.D.Cal. 1982). Here, a motion to dismiss the petition for failure to exhaust administrative remedies is appropriate because the facts appear in the administrative record before the Court, and the motion addresses an issue of procedural exhaustion.  Accordingly, the Court will consider the motion pursuant to its authority under Habeas Rule 4.

II.   Exhaustion of Administrative Remedies

In the FAP, Petitioner seeks to have the BOP consider designating him to a state institution to facilitate concurrent

service of a state sentence imposed on Petitioner after he was sentenced on the offenses that resulted in his federal prison commitment.

### A. Legal Standards

As a "prudential matter," federal prisoners are generally required to exhaust available administrative remedies before bringing a habeas petition pursuant to 28 U.S.C. § 2241. Huang v. Ashcroft, 390 F.3d 1118, 1123 (9th Cir. 2004) (quoting Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001)); Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986). The exhaustion requirement applicable to petitions brought pursuant to § 2241 is judicially created and is not a statutory requirement; thus, a failure to exhaust does not deprive a court of jurisdiction over the controversy. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds, Reno v. Koray, 515 U.S. 50, 54-55 (1995). If a petitioner has not properly exhausted his or her claims, a district court in its discretion may either excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court. Brown v. Rison, 895 F.2d at 535.

Exhaustion may be excused if the administrative remedy is inadequate, ineffective, or if attempting to exhaust would be futile or would cause irreparable injury. Fraley v. United States Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993); United Farm Workers of America v. Arizona Agr. Emp. Rel. Bd., 669 F.2d 1249, 1253 (9th Cir. 1982). Failure to exhaust administrative remedies may be excused where an official policy of the BOP requires denial of the claim. Ward v. Chavez, 678 F.3d 1042, 1045-46 (9th Cir. 2012). Factors

4

weighing in favor of requiring exhaustion include whether 1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision, 2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme, and 3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. Noriega-Lopez v. Ashcroft, 335 F.3d 874, 880-81 (9th Cir. 2003) (citing Montes v. Thornburgh, 919 F.2d 531, 537 (9th Cir. 1990)).

### B. Analysis

Respondent argues that Petitioner's efforts to exhaust administrative remedies were insufficient. Petitioner's appeal from the regional director's decision, which was received by the BOP's Central Office on July 19, 2012, was rejected due to Petitioner's failure to submit with his appeal his original request (BP-9) and the warden's response (BP-09). (Pet., doc. 1, exs. D-E.) Petitioner was given fifteen (15) days from the date of the rejection notice in which to resubmit his matter in the proper form. (Id. at ex. E.) Petitioner received notice of the rejection on October 4, 2012, but Petitioner's resubmission was not received until over twenty (20) days later on October 26, 2012. (Id. at exs. E, F; pet. at 3.) The resubmission also failed to include a copy of Petitioner's BP-9 request or the BP-09 response from the warden. (Id. at ex. F.) On January 9, 2013, Petitioner received a response from the Central Office informing him his BP-11 was being rejected for his failure to provide a copy of his BP-9 and BP-09, for being untimely, and for not providing a staff memo on BOP letterhead explaining why the untimeliness was not Petitioner's fault. (Id.)

5

Petitioner argues he had thirty days in which to file his appeal.

The BP-11 submission to the General Counsel at the Central Office must include a copy of the inmate's BP-9 and BP-10 filings, as well as the BOP's responses to both. 28 C.F.R. 542.15(b)(1). Although Petitioner claims the required documents were attached to earlier levels of the appeal, the administrative record reflects that the BOP found that Petitioner's submission omitted some of the required documents.

With respect to the pertinent time limitations, Petitioner correctly contends that a thirty-day period is provided for filing an initial appeal to the General Counsel. 28 C.F.R. § 542.15(a). However, Petitioner's initial filing was rejected with a statement of reasons for the rejection. Thus, Petitioner's renewed appeal functioned as a resubmission following a rejection. The regulation provides, "If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal." 28 C.F.R. § 542.17(b). Here, the BOP notified Petitioner he had fifteen days to resubmit an appeal in the proper form. Petitioner did not attempt to seek an extension of time or show he was unfairly prevented from timely filing a complete resubmission in compliance with regulations. Thus, Petitioner failed to complete the administrative remedy process.[1]

Respondent contends that because Petitioner's appeal was "rejected," as distinct from "denied," the BOP indicated that Petitioner failed to follow the appropriate procedures. See, 28

---

[1] Time periods may be extended when the inmate demonstrates a valid reason for delay that has prevented timely submission, such as extended transit, illness, or institutional delays. 28 C.F.R. §§ 542.15(a), 542.14(b).

6

C.F.R. § 542.17(a) (authorizing rejection and return of an appeal that "does not meet any other requirement of this part").  The regulations provide that an inmate has not exhausted the administrative remedy process until he has filed his complaint at all three possible levels of review and has been denied at all three levels: BP-9, BP-10, and BP-11.  See, 28 C.F.R. §§ 542.10 through 542.17.  Respondent contends that Petitioner's procedural default should bar this Court's review of Petitioner's claims.

To maintain the effective functioning of an administrative, adjudicative procedure, proper exhaustion generally requires compliance with an agency's deadlines and other critical procedural rules.  See, Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) (concerning exhaustion under the PLRA but analogizing it to exhaustion of state court remedies in habeas corpus cases brought pursuant to § 2254).  A default with respect to the administrative remedy procedures constitutes a failure to exhaust and warrants dismissal of a § 2241 petition.  Nigro v. Sullivan, 40 F.3d 990, 997-98 (9th Cir. 1994).  When a petitioner in a § 2241 proceeding fails to exhaust administrative remedies, a district court should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused.  Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011).

Here, no basis for a stay appears.  Accordingly, Petitioner's failure to exhaust administrative remedies warrants dismissal of the petition without prejudice.

III.   Petitioner's Request for Designation to a State Facility

Alternatively, because the BOP relied on its program statements in denying Petitioner's request for designation to a state facility

to permit concurrent service of a state court sentence (pet., doc. 1, exs. B, C), it may be concluded that requiring further exhaustion of administrative remedies would be futile, and thus exhaustion would be excused.  Cf. Ward v. Chavez, 678 F.3d at 1045-46.

Accordingly, the Court will consider Petitioner's claim that he was entitled to further consideration by the BOP of his request for designation of a state facility for service of his federal and state sentences.

### A.   Jurisdiction

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

Petitioner argues that the BOP's conduct with respect to the execution of his sentence is contrary to federal law, including 18 U.S.C. § 3621.  This Court thus has subject matter jurisdiction over the petition pursuant to 28 U.S.C. § 2241, which provides that relief by way of a writ of habeas corpus extends to a person in custody in violation of the Constitution of laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  Petitioner correctly brings his challenge pursuant to § 2241 because he is challenging the manner or conditions of his sentence's execution.  Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

Although there is no subject matter jurisdiction in this Court to review individualized, discretionary determinations made by the BOP pursuant to 18 U.S.C. § 3621, judicial review remains available for allegations that BOP action is contrary to established federal

8

law, violates the Constitution, or exceeds statutory authority. Reeb v. Thomas, 636 F.3d 1224, 1228 (9th Cir. 2010). This Court retains jurisdiction to determine whether non-individualized BOP action is contrary to its statutory authority. Close v. Thomas, 653 F.3d 970, 973-74 (9th Cir. 2011), cert. den., 132 S.Ct. 1606 (2012).

When Petitioner filed the petition, he was an inmate of the United States Penitentiary at Atwater (USPA), California, located within the territorial boundaries of the Eastern District of California. (Doc. 1, 1.) Petitioner has named as Respondent the warden of USPA and thus has named a respondent with the power to produce the Petitioner. See, Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-95 (1973); Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992). The Court thus has jurisdiction over the person of the Respondent pursuant to 28 U.S.C. §§ 2241(a) and 84(b).

B.   Factual Summary

In July 1997, Petitioner was arrested by North Carolina authorities on various state charges involving violent crimes against the person. (Decl. Bryan Erickson, doc. 27-1, ¶ 3, att. 1 at 14-15.)

On February 12, 1998, while still in North Carolina state custody, Petitioner was "borrowed" pursuant to a federal writ of habeas corpus ad prosequendum from the state of North Carolina. (Id. at ¶ 4, att. 2.) On January 6, 1999, Petitioner was sentenced to twenty-six (26) years in the United States District Court for the Western District of North Carolina, consisting of consecutive terms on one count of conspiracy to interfere with commerce by threats or violence in violation of 18 U.S.C. § 371 and two counts of

possession of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). (Id. at ¶ 5, att. 3; doc. 30 at p. 2.)

On February 11, 1999, North Carolina authorities notified the United States Marshals of the Western District of North Carolina that all North Carolina state charges were dismissed. Petitioner was released to exclusive federal custody. (Decl. at ¶ 6, att. 2.)

On April 28, 2000, Petitioner was temporarily released to the custody of Virginia state authorities pursuant to the Interstate Agreement on Detainers. On September 22, 2000, Petitioner was sentenced on two cases in state court in Stafford County, Virginia, to a thirty-year term and a three-year term, for a total of thirty-three (33) years, with twenty-three (23) years suspended, leaving ten (10) total years of the Virginia sentence to be served. The Virginia sentencing court specified that the terms were to run consecutively to any other sentence. (Id. at ¶¶ 7-8, atts. 4-5.)

On January 18, 2001, the Petitioner was returned to the custody of the BOP, and the Virginia Department of Corrections placed the Virginia judgment as a detainer. (Id. at ¶ 9, atts. 4-5.)

The BOP computed Petitioner's twenty-six year sentence based on a 312-month term of imprisonment commencing on January 6, 1999, the date the federal sentence was imposed, with prior custody credit from July 31, 1997, the date of defendant's arrest by North Carolina authorities, through January 5, 1999, the day before imposition of his federal sentence, for a total of 524 days. (Id. at ¶ 10, att. 6.)

The Virginia detainer remains in place, and Petitioner has not yet commenced serving his Virginia sentence. (Id. at ¶ 9, att. 6.)

### C. The BOP's Position

The BOP considered Petitioner's administrative appeal and determined that after state charges were dropped, Petitioner was in primary federal custody, and had been properly designated to a federal facility until the end of his term pursuant to 18 U.S.C. § 3621(a), which provides that a person sentenced and committed to BOP custody is committed until the expiration of the term. (Doc. 1, 12.)

### D. Analysis

Petitioner contends that the BOP's failure to consider his request for a nunc pro tunc designation is contrary to federal law, including 18 U.S.C. § 3621 and BOP Program Statement 5160.05. Respondent contends that the BOP properly considered Petitioner's claim and exercised its discretion to deny Petitioner's request for a nunc pro tunc designation based on the primacy of federal jurisdiction and the absence of a pre-existing state sentence.

Title 18 U.S.C. § 3621(b) states that the BOP "shall designate the place of the prisoner's imprisonment," and "may designate" any correctional facility meeting minimal standards, even if it is not maintained by the federal government, that "the Bureau determines to be appropriate and suitable," considering 1) the resources of the facility contemplated, 2) the nature and circumstances of the offense, 3) the history and characteristics of the prisoner, 4) any statement by the court that imposed the sentence a) concerning the purposes for which the sentence to imprisonment was determined to be warranted, or b) recommending a type of penal or correctional facility as appropriate, and 5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of

title 28.  18 U.S.C. § 3621(b).

The BOP may designate a state facility as appropriate for the service of a "concurrent" federal sentence when it complies with the intent of the federal sentencing court or comports with the goals of the judicial system.  Taylor v. Sawyer, 284 F.3d 1143, 1149 (9th Cir. 2002).  However, the BOP has broad discretion to refuse to make a nunc pro tunc designation of a state prison even if it is contrary to a state sentencing court's order.  Reynolds v. Thomas, 603 F.3d 1144, 1151 (9th Cir. 2010).  The Ninth Circuit Court of Appeals reaffirmed the validity of BOP Program Statement 5160.05 in Reynolds v. Thomas, 603 F.3d 1144, 1150 (9th Cir. 2010), as follows:

> On its face, § 3621(b) gives the BOP only the administrative responsibility to identify the facility in which a federal prisoner will serve out the sentence imposed by the district court. The BOP has interpreted this statute, however, as authorizing it to issue a nunc pro tunc order designating a state prison as the facility for service of a federal sentence "when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system." BOP Program Statement 5160.05 (January 16, 2003). Program Statement 5160.05 explains, "[w]hen a federal judge orders or recommends a federal sentence run concurrently with a state sentence already imposed the Bureau implements such order or recommendation, ordinarily by designating the state facility as the place to serve the federal sentence." The BOP will also consider "an inmate's request for pre-sentence credit toward a federal sentence for time spent in service of a state sentence as a request for a nunc pro tunc designation." The Program Statement requires the BOP to consider the inmate's request, and sets forth the procedure the BOP must follow in determining whether to designate a state prison for (in effect) concurrent service of a federal sentence. Such procedures require the BOP to ask the federal sentencing court if it has any objections to such designation.
>
> We approved the BOP's approach under this Program Statement in Taylor v. Sawyer, 284 F.3d at 1148-49.FN4 In that case, we considered and rejected the argument that

the Program Statement's grant of authority to the BOP to issue a nunc pro tunc designation was inconsistent with § 3584 and thus invalid. Id. Instead, joining other circuits that had considered the issue, we concluded that "such a designation by the BOP is plainly and unmistakably within the BOP's discretion." Id. at 1149; see McCarthy v. Doe, 146 F.3d 118, 123 (2d Cir.1998) (holding that the BOP has the discretion to grant or deny a request for nunc pro tunc relief); Barden v. Keohane, 921 F.2d 476, 478 (3d Cir.1990) (same); see also Romandine v. United States, 206 F.3d 731, 738 (7th Cir.2000) (expressing agreement with "McCarthy's bottom line" on this point). Finally, we rejected the defendant's arguments that such a conclusion was contrary to the doctrine of dual sovereignty, principles of comity and federalism, and the Full Faith and Credit Clause. Taylor, 284 F.3d at 1151-53.

> FN4. The BOP replaced Program Statement 5160.04 (April 19, 2000) referenced in Taylor, 284 F.3d at 1143, with the current Program Statement § 5160.05 in January 2003 in order to comply with a federal "plain language" initiative. The two program statements are identical in all material respects.

Reynolds v. Thomas, 603 F.3d at 1150.

The nunc pro tunc designation procedure emanates in part from a concern with conflicting sovereignties. Generally, the sovereign that first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration. United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980) (citing Ponzi v. Fessenden, 258 U.S. 254, 261-62 (1922)); Thomas v. Brewer, 923 F.2d 1361, 1365 (9th Cir. 1991). The sovereign with priority of jurisdiction may elect under the doctrine of comity to relinquish jurisdiction to another sovereign. United States v. Warren, 610 F.2d at 685.

Here, the state acquired primary jurisdiction by being the first to arrest Petitioner in July 1997. The fact that Petitioner

13

was "borrowed" from the state and brought before the federal court in February 1998 via a writ of habeas corpus ad prosequendum confirms that the state retained primary jurisdiction at that time and when Petitioner was sentenced.  See, <u>Reynolds v. Thomas</u>, 603 F.3d at 1152.  However, authorities of the state of North Carolina relinquished primary jurisdiction about a month after Petitioner was sentenced in the federal matter.  Thus, when he was sentenced in state court, the federal court had primary jurisdiction, and the federal punishment was already in progress; the state sovereign retained only a detainer upon the completion of the federal sentence.

The cases relied on by Petitioner apply where the state court not only has primary jurisdiction over the Petitioner, but also is the first to impose a sentence on the Petitioner.  This case is not analogous to <u>Reynolds</u>, 603 F.3d at 1156, where the BOP's nunc pro tunc order functions as a "solution to the problem posed when the state has primary jurisdiction but the federal sentence is imposed before the state sentence."  In such a situation, the nunc pro tunc order has the retroactive effect of making the state and federal sentences run concurrently because it retroactively establishes that the inmate began "serving" his federal sentence while still in primary state custody.  Pursuant to 18 U.S.C. § 3585(a), "[a] [federal] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the <u>official detention facility</u> at which the sentence is to be served."  (Emphasis added.)  The nunc pro tunc designation renders the state facility where the petitioner was previously held the "official

14

detention facility" for purposes of his federal sentence, which in turn, pursuant to § 3585(a), starts the federal sentence at an earlier date.

The pertinent statutes do not require such a remedy here. There was no portion of Petitioner's state sentence that was served before Petitioner was sentenced on his federal charges and that warranted an award of credit. A federal sentence cannot commence until a prisoner is sentenced. Schleining v. Thomas, 642 F.3d 1242, 1244 (9th Cir. 2011), cert. den. 132 S.Ct. 2415 (2012). Multiple terms of state and federal imprisonment run consecutively absent a court order that the sentences run concurrently. 18 U.S.C. § 3584(a).[2] Here, there was no federal court order indicating that Petitioner's sentences should run concurrently. Further, although pursuant to § 3584(a), a court may order a term of imprisonment to run concurrently for "a defendant who is already subject to an undischarged term of imprisonment," there was no such term existing at the time Petitioner was sentenced in the federal case.

The BOP's actions were, therefore, consistent with the plain terms of § 3584. Further, the BOP's position does not result in unfairness to the Petitioner. See Reynolds, 603 F.3d at 1152-53.

---

[2] Section 3584(a) provides as follows:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

In sum, Petitioner has not shown that the BOP's consideration of his request for a nunc pro tunc designation order was contrary to established federal law, violated the Constitution, or exceeded statutory authority.  Therefore, the petition for writ of habeas corpus should be denied.

IV.  Disposition

Based on the foregoing, it is ORDERED that:

1) Respondent's motion to dismiss or deny the first amended petition for writ of habeas corpus is GRANTED;

2) The first amended petition for writ of habeas corpus is DENIED; and

3) The Clerk is DIRECTED to enter judgment for Respondent.[3]

IT IS SO ORDERED.

Dated:   **March 25, 2014**                    /s/ Sheila K. Oberto
                                       UNITED STATES MAGISTRATE JUDGE

---

[3] A certificate of appealability is not required to appeal the denial of a petition under § 2241.  Forde v. United States Parole Commission, 114 F.3d 878, 879 (9th Cir. 1997).  This is based on the plain language of § 2253(c)(1), which does not require a certificate with respect to an order concerning federal custody because the detention complained of does not arise out of process issued by a state court. Id.

16